IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ernestine M. Nelson, ) | Civil Action No. 8:06-2559-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of ) | **OF MAGISTRATE JUDGE** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Ernestine M. Nelson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 49 years old on the date she alleged she became disabled, and 54 years old on the date of the Administrative Law Judge's (ALJ) decision. (Tr. at 395, 410, 471.) The plaintiff has a tenth grade education (Tr. at 104, 417-18, 471), with past semi-skilled work experience as a cashier, food checker, line serve, and grill cook. (Tr. at 89-96, 99, 412-16, 454-55, 476-77.) The plaintiff alleges disability due to mental problems and headaches. (Tr. at 83, 85, 98.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff protectively filed applications for DIB and SSI on September 24, 2001. (Tr. at 48-50, 394-98). She alleges she became disabled on May 15, 2001, due to mental problems and headaches. (Tr. at 83, 85, 98.) The plaintiff's applications were denied initially and upon reconsideration. (Tr. at 33-34, 46, 398-402.) A hearing was held on September 16, 2004, in Greenville, South Carolina. (Tr. at 465-92.) When the ALJ learned that the plaintiff had obtained a mailing address in Greenville in order to have her case heard in that venue rather than where she lives in Columbia, South Carolina, he closed the hearing and removed the case to Columbia. (Tr. at 489-92). On February 23, 2004, a second hearing before an ALJ was held. (Tr. at 405-64). The ALJ issued his decision on July 18, 2005, finding that plaintiff was not disabled. (Tr. at 15-26.)   On August 26, 2006, the Appeals Council denied plaintiff's request for a review of the ALJ's second decision, (Tr. at 7-10), thereby making the ALJ's second decision the Commissioner's final decision of judicial review.

The ALJ made the following findings:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's impairment(s) are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding her limitations from are not totally credible for the reasons set forth in the bod of the decision.

6. The claimant has the residual functional capacity to perform work with restrictions requiring routine, repetitive tasks involving simple 1-2 step instructions, as in unskilled work, in a low stress environment with no public contact due to her depression.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404-1565 and 416.965).

8. The claimant is closely approaching advanced age (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a limited education (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills and/or transferable skills are not an issue (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of medium and light work (20 CFR §§ 414.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of medium and light work, using Medical-Vocational Rules 203.19 and 202.11 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as perform the unskilled [sic], medium jobs of hand packer and order puller with 2900 jobs in the South Carolina economy, 203,000 jobs nationally, and the unskilled, light jobs of garments order and cloth folder with 1940 jobs in the South Carolina economy, 205,000 nationally.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled.  Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that he met the requirements of section 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P; (2) failing to specifically identify which of the plaintiff's impairments were severe; (3) failing to give proper weight to the opinions of the plaintiff's treating physicians; (4) failing to clarify an alleged discrepancy between the testimony of the vocational expert and the Dictionary of Occupational Titles; and (5) failing to specifically define the "low stress work environment" limitation of the plaintiff.  The Court will address each alleged error in turn.

**I.    LISTING 12.05**

The plaintiff's first contention is that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in section 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P.  Section 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function;

. . .

Under Section, 12.05(B), therefore, if the plaintiff demonstrates an IQ score of less than 60 he is automatically considered disabled. In contrast, there are two requirements under Section 12.05(C).[2] *See Boatwright v. Secretary, Dept. of Health and Human Services*, 1989 WL 79720, at *2 (4th Cir. July 12, 1989). First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive, and second, he must be able to demonstrate an additional significant limitation. *See id.* at *2. If both requirements are met, then the plaintiff is considered disabled and entitled to benefits. *See id. at *3;* 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

The plaintiff contends that the ALJ erred in not finding that he was disabled under either subsection B or C. While the Court makes no specific determination as to whether the plaintiff in fact meets the requirements of these subsections, respectively, the Court agrees that a remand is in order because the ALJ made no analysis of the matter whatsoever, such that a substantial evidence review can even be made. Although the ALJ analyzed whether the plaintiff's impairment met the requirements of Section 12.04 and indicates that Dr. Robert Brabham found that the plaintiff's I.Q. scores did meet the requirements of Section 12.05, the ALJ never makes any analysis concerning the Listing, himself. (See Tr. at 20-21.)

---

[2] By the language of the regulation, it would appear that if a plaintiff satisfies the requirements of Subsection C of Section 12.05, then he has demonstrated that he has "significantly subaverage general intellectual functioning." *See* 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P ("The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied."). The defendant argues that the plaintiff must both satisfy Subsection C and demonstrate that he has "significantly subaverage general intellectual functioning." While the Court is inclined to treat those issues as one in the same, the regulation itself seems to confirm the defendant's position. *See id.* 12.00(A). Regardless of how Section 12.05 should be interpreted and applied, the ALJ made no application whatsoever for the district court to consider on appeal and, therefore, a remand is in order. And, of course ,whether the required degree of intellectual functioning existed prior to age 22 is an entirely different matter and one addressed more at length, *infra*.

6

The plaintiff emphasizes that there is evidence that he, in fact, meets the Listing, either under subsection B or C, because Dr. Brabham determined that he had a full-scale I.Q. score of 59 and even the government's own consultative examiner, Dr. Stephanie Boyd, found that the plaintiff had a full-scale I.Q. of 60.  (Tr. at 362, 379.)  Concerning the second requirement of Section 12.05, although the ALJ failed to be specific, the defendant concedes that the ALJ found that some of the plaintiff's impairments are severe.  *See Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985) (finding that additional limitation "need not be disabling in and of itself").  The defendants do not materially challenge that the plaintiff has satisfied the second requirement of Section 12.05(C) that he suffers additional significant limitations.

Although the defendant concedes that the plaintiff's I.Q. score falls within the required range of either subsection (B) or (C), the Commissioner seems to reject that the score reflects a lifelong condition.  *See Branham*, 775 F.2d at 1274 (regulations "expressly define[s] mental retardation as denoting 'a lifelong condition'").  Specifically, the defendant contends that the plaintiff has failed to demonstrate that the plaintiff's condition existed prior to the age of 22 as Section 12.05 expressly requires.  The defendant reasons that, despite the plaintiff's scores, substantial evidence existed for the ALJ to reject them as supportive of the requirements of Section 12.05 and to conclude that the plaintiff's condition did not exist prior to the age of 22 because the plaintiff was not required to take special education classes in highschool (although she dropped out in the tenth grade); performed semi-skilled work for more than 15 years; had a driver's licence and drove a car; and performed a range of daily activities.[3]

---

[3] It should be noted that the Fourth Circuit has held that "in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's I.Q. had remained relatively constant." *Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham*, 775 F.2d at 1274).  The Court and ALJ, therefore, should assume no change in the claimant's I.Q. unless there is affirmative evidence to the contrary.

The ALJ may so conclude on remand. But no consideration of the Listing was given in the first instance. That which the defendant now proffers is a post-hoc rationalization of the ALJ's decision and the Court will not consider it. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). Post-hoc justifications cannot succeed unless they are so conclusive that no reasonable ALJ could have resolved the disputed matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Such is not the case here.

While it is true that some of the considerations raised by the defendant on appeal – past performance of semi-skilled work, daily activities, etc. – were discussed in regards to the ALJ's analysis of the plaintiff's residual functional capacity ("RFC"), those considerations were never discussed in regards to Section 12.05, either as they relate to the plaintiff's adaptive functioning or significant work-related limitations. As stated, the ALJ made no 12.05 Listing analysis. The Court declines to do so, in the first instance. On remand, the ALJ should identify "the relevant listed impairments. He should then . . . compare[] each of the listed criteria to the evidence of [the plaintiff's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

**II.  SEVERE IMPAIRMENTS**

The plaintiff next contends that the ALJ was in error by failing to specify which of the plaintiff's impairments he considered severe. The defendant does not deny the ALJ's omission but instead argues simply that the omission is harmless, insofar as the ALJ did, in fact, consider the effect of the plaintiff's impairments, presumably all of them, on her

RFC. On remand, the ALJ should identify specifically those impairments he finds to be severe. On its own, the omission would likely not be sufficient to justify remand.

### III.   TREATING PHYSICIAN

The plaintiff next contends that the ALJ failed to give the opinions of her treating physicians, Dr. Philip Michels and Dr. Patricia Witherspoon, controlling authority. On September 2, 2004, Dr. Michels concluded that the plaintiff would miss more than four days per month in any job. (Tr. at 302.) He further stated that the plaintiff is unable to meet the competitive standards in maintaining attention, performing at a consistent pace, accepting instructions and responding appropriately to criticism from supervisors, and poor concentration and memory. (Tr. at 301-302.) On February 2, 2005, Dr. Michels reiterated these limitations. (Tr. 308-309.) Dr. Witherspoon arrived at essentially the same conclusions, including the belief that the plaintiff would miss more than four days of work per month. (Tr. at 306-07, 310-11.)

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

9

The ALJ did not accord Dr. Michels' opinions controlling weight because "his notes indicate that the claimant was not severely depressed, was generally doing quite well, and had a new outlook on her personal matters." (Tr. at 18.) It may be true that Dr. Michels' records do not support the conclusions as reflected above. But this brief, single-sentence analysis of the ALJ does not reflect inconsistences sufficient to disregard Dr. Michels' opinion as noncontrolling. The ALJ's analysis does not explain, in any reviewable detail, how Dr. Michels' conclusion that the plaintiff would have to miss in excess of four days a month was inconsistent with the medical record. Nor does the ALJ attempt to demonstrate inconsistencies regarding Dr. Michels' belief that the plaintiff cannot meet the requisite competitive standards of employment. Although the ALJ thoroughly describes Dr. Michels' findings, the analysis upon which he relies to discount his conclusions is cursory and not suitable for substantial evidence review.

The defendant has responded with evidence and argument not specifically relied upon by the ALJ that will not be considered here. But even were the Court to consider it, the evidence is unpersuasive. The defendant recites generalized observations of Dr. Michels as some specific evidence of inconsistency between his treatment notes and his ultimate disability conclusions. For example the defendant emphasizes that Dr. Michels' had observed that the plaintiff "seem[ed] to be functioning in a tolerable way" (Tr. 182). Of course, on that same page the diagnostic impression of Dr. Michels was "major depression." *Id*. It is simply too slender a reed upon which to base a dismissal of a treating physician's opinion.

In regards to Dr. Witherspoon's opinions, the ALJ's analysis suffers the same inadequacy. The ALJ dismissed Dr. Witherspoon's ultimate medical opinion concerning the plaintiff's ability to work and function based on two reasons. Both are deficient. First, after substantially recounting Dr. Witherspoon's treatment of the plaintiff, the ALJ concludes that Dr. Witherspoon's opinion was somehow based exclusively on the plaintiff's headache pain and because on various, isolated occasions it was noted that the plaintiff's headaches were

10

not severe, the doctor's opinions should be discounted. First, the record does not reflect that Dr. Witherspoon's disability assessment was based exclusively on the severity of the plaintiff's headaches. Clearly, the plaintiff's mental ability and aptitude was of critical relevance in Dr. Witherspoon's calculation. (Tr. at 306-07; 310-11.) Thus, whatever inconsistencies the ALJ perceived in regards to Dr. Witherspoon's observations concerning the plaintiff's headaches, they were insufficient, on their own, to disrupt the integrity of Dr. Witherspoon's beliefs about the plaintiff's ability to meet the competitive standards of the work environment. Second, the Court disagrees that any of the rather banal and generic comments of Dr. Witherspoon that the plaintiff's headaches were controlled on any given day or that an injection was unnecessary on any particular occasion (Tr. at 19) are somehow inconsistent with or contrary to Dr. Witherspoon's omnibus conclusions.

The ALJ also appears to have discounted Dr. Witherspoon's opinion because it was somehow inconsistent with Dr. Michels' observations. (Tr. at 19.) Again, the ALJ highlights observations of Dr. Michels that do not seem specifically contrary to any of Dr. Witherspoon's opinions. *Id*. More importantly, the ALJ fails to revisit the fact that Dr. Michels and Dr. Witherspoon actually shared nearly identical opinions concerning the plaintiff's ability to meet both the attendance and competitive standards requirements of work.

The defendant's other post-hoc rationalizations, including general comments and findings that the plaintiff "appear[ed] to be doing well" with regards to her depression; that she was "generally doing quite well;" that she had "a new outlook on her personal matters;" and that she "fe[lt] grateful to be alive" (Tr. 159, 243), simply cannot be characterized as inconsistent with the very specific limitations and restrictions in functioning that the Dr. Witherspoon detailed. (Tr. at 306-07, 310-11.)

It should be re-emphasized that both Drs. Michels and Witherspoon believed the plaintiff would be required to miss more than four days of work per month. (Tr. at 302, 307.) Critically, the vocational expert ("VE") testified that any individual who missed more than *two*

days each month would be unable to perform any work. (Tr. at 458.) As stated, the ALJ's decision does not identify any evidence that specifically undermines the opinion that the plaintiff would miss so many days per month. Insofar as both of the plaintiff's treating physicians concluded that the plaintiff would have to miss more than four days each month, it seems that, at a minimum, the ALJ would need to explain how he arrived at the conclusion that the plaintiff, in fact, would miss less than two days, or at least less than four days, per month. General and isolated comments that the plaintiff was "doing well" on particular occasions seems inadequate to do so. As stated, the plaintiff's attendance is highly material; the VE indicated that the attendance consideration alone would disqualify the plaintiff from working.

On remand, the VE should revisit the weight to be afforded the plaintiff's treating physicians.

### IV.  VOCATIONAL EXPERT

The plaintiff next contends that the ALJ failed to resolve a conflict between the VE's testimony that the plaintiff could perform a significant number of jobs in the national economy, including hand packer, order puller, garment sorter, and cloth folder, and the ALJ's assessment that she could only perform tasks involving "simple 1-2 step instructions, as in unskilled work" (Tr. at 23, 25). Specifically, the plaintiff emphasizes that each of the jobs identified by the VE requires a Reasoning Development Level of **2**,[4] by the express terms of the U.S. Department of Labor's Dictionary of Occupational Titles (4th ed., Rev. 1991) ("DOT") Nos. 920.587-018, 922.687.058, 222.687-014, 589.687-014. In contrast, the ALJ concluded that the plaintiff was limited to "repetitive tasks involving simple 1-2 step instructions . . ." (Tr. at 23, 25), which is a Reasoning Developmental Level **1** attribute. DOT Appendix C (Components of the Definition Trailer, III. (GED)) at 1104. The plaintiff,

---

[4] Level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT Appendix C (Components of the Definition Trailer, III. (GED)) at 1104.

therefore, argues that the VE's vocational recommendations, which all require level 2 reasoning, are inconsistent with the level 1 reasoning implied by the ALJ's finding that the plaintiff could only perform tasks involving one to two step instructions.

Normally, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict . . . ." SSR 00-4p. Even still, it appears that "the 'definitional requirements' for the jobs listed in the DOT are merely advisory in nature and serve only as a reference for the ALJ and VE." *Warf v. Shalala*, 844 F. Supp. 285, 289 (W.D. Va.1994); *see also Lawson v. Apfel*, 46 F. Supp. 2d 941, 947 (W.D. Mo. 1998).

In this case, the ALJ clearly expressed to the VE that the plaintiff would be limited to performing tasks involving simple instructions. (Tr. at 455.) Neither the VE nor the ALJ, however, pursued any specific discussion as to whether that articulated limitation was inconsistent with the DOT definitions of the jobs recommended. While the Court would like to assume that the VE had specifically concluded that the jobs which were recommended could accommodate the limitation of the plaintiff in spite of the fact that the DOT defined them as requiring a level 2 reasoning capacity, it is not the undersigned's place to do so.

The Tenth Circuit has well-articulated the rule, affirmed in *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir.2005), and codified in SSR 00-4p, that an ALJ must elicit a reasonable explanation for any material conflicts between a VE's testimony and occupational information in the DOT. *See Garcia v. Barnhart*, 188 Fed. Appx. 760, 766-67 (10 th Cir. 2006). In *Hackett*, the Tenth Circut found a facial conflict between a claimant's "inability to perform more than simple and repetitive tasks" and the "level-three reasoning" required in the DOT for jobs identified by the VE, and, consequently, reversed and remanded for an explanation that would resolve the conflict so as to permit reliance on the VE's testimony. *Hackett*, 395 F.3d at 1176. For the same reasons, the Court believes that remand is necessary for the ALJ to resolve and clarify the apparent conflict between the

limitations of the plaintiff as identified by the ALJ, the VE's job recommendations, and the definitional requirements of the DOT.

Ironically, the defendant relies on *Hackett* in support of its position that the VE's testimony and the DOT were consistent. Specifically, the defendant cites to the Tenth Circuit's conclusion, in *Hackett*, that "level-two reasoning appears more consistent with Plaintiff's RFC [for simple and routine work tasks]" than level three reasoning, to argue that the plaintiff's limitations, in this present case, comport with level two reasoning. *Id*. at 1176. The Court will not so apply *Hackett*.

First, as already recited, *Hackett* primarily reaffirms the proposition that the ALJ must clarify discrepancies between the VE's testimony and the DOT, as this Court has already recognized and found wanting in the present case. Second, it is not a holding of *Hackett* that the limitation at issue in this case, "simple 1-2 step instructions," comports affirmatively with level two reasoning. The court, in *Hackett*, simply reached the comparative conclusion that the limitation of the plaintiff was more akin to level two reasoning than to level three. The comment is fairly case-specific dicta.

On remand, the ALJ should clarify whether the jobs identified by the VE can accommodate the reasoning level of the plaintiff, which the ALJ has identified.

### V. LOW STRESS ENVIRONMENT LIMITATION

Finally, the plaintiff argues that the ALJ did not adequately define "low stress" in his assessment of the plaintiff's residual functional capacity. The Court, however, agrees with the position of the defendant that the ALJ qualified a "low stress" work environment as one which involved no public contact. (Tr. at 23, 25.) The objection does not warrant further consideration on remand.

### CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under

sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above.  See *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

    IT IS SO RECOMMENDED.

                                          s/Bruce Howe Hendricks
                                          United States Magistrate Judge

September 20, 2007
Greenville, South Carolina